

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00248-CV

**IN THE INTEREST OF E.O.R.** and A.A.A.G. II., Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2016PA00918
Honorable Peter Sakai, Judge Presiding

### OPINION ON MOTION FOR REHEARING

Opinion by:   Patricia O. Alvarez, Justice

Sitting:      Sandee Bryan Marion, Chief Justice
            Marialyn Barnard, Justice
            Patricia O. Alvarez, Justice

Delivered and Filed:  November 7, 2018

AFFIRMED

On September 12, 2018, we issued an opinion and judgment affirming the trial court's order terminating Appellant Mom's parental rights to her children, and Mom timely filed a motion for rehearing.  We deny the motion for rehearing, but we withdraw our September 12, 2018 opinion and judgment and substitute this opinion and judgment to clarify the reasoning for our decision.

In this parental rights termination case, Appellant Mom raises three complaints: (1) the trial court abused its discretion by denying her motion for continuance, (2) the evidence was neither legally nor factually sufficient to support the trial court's finding that terminating her parental rights was in the children's best interests, and (3) even if her rights were properly terminated, the

trial court erred in placing the youngest child with foster parents rather than with the child's maternal grandmother.

Because the trial court acted within its discretion, the evidence is legally and factually sufficient to support the findings, and Mom had no standing to challenge the placement, we affirm the trial court's order.

## BACKGROUND

Appellant Mom has two children who are the subject of this suit: E.O.R. and A.A.A.G.;[i] they were born of different fathers. In April 2016, the Department received a report of domestic violence between Mom and A.A.A.G.'s father (Dad). The Department investigated, discovered repeated incidents of family violence perpetrated by Dad, and the children were removed from Mom and Dad. E.O.R. was placed with his biological father and stepmother; A.A.A.G. was placed with a foster family.

In the domestic violence incidents, Dad was the perpetrator: he struck Mom in the head, back, and legs; he struck E.O.R., smothered his face with a bean bag chair, and threw a cell phone at him; and Dad threatened to kill E.O.R. and Mom. After one incident, Dad was arrested for felony assault for choking and strangling Mom. Mom dismissed the violent incidents as overstated, failed to complete her service plan, and repeatedly tested positive for marijuana.

After a bench trial before an associate judge, the trial court terminated Mom's and Dad's parental rights to the children. The order was appealed for a de novo review by the district court, which affirmed the associate judge's order. Mom appeals.[ii]

---

[i] To protect the minors' identities, we refer to the parents and the children using aliases. *See* TEX. R. APP. P. 9.8.
[ii] Because Mom is the only appellant, we limit our recitation of the facts to those that pertain to Mom or the children.

## MOTION FOR CONTINUANCE

In her first issue, Mom argues that the trial court abused its discretion by denying her May 3, 2017 written motion for continuance because there was no evidence that the requested delay would be detrimental to the children, her parental rights are of constitutional dimension, and she needed more time to work services.

The Department responds that because Mom's motion was not supported by an affidavit, it does not meet Rule 251's requirements; the trial court had already granted Mom's April 11, 2017 motion for continuance; and the trial court acted within its discretion by denying Mom's May 3, 2017 motion.

### A. Standard of Review

"In a termination of parental rights case, an appellate court reviews a trial court's denial of a motion for continuance for an abuse of discretion." *In re R.F. III*, 423 S.W.3d 486, 490 (Tex. App.—San Antonio 2014, no pet.) (citing *In re E.L.T.*, 93 S.W.3d 372, 374 (Tex. App.—Houston [14th Dist.] 2002, no pet.)). "The granting or denial of a motion for continuance is within the trial court's sound discretion." *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *accord In re E.L.T.*, 93 S.W.3d at 374. "The trial court's action [in denying a motion for continuance] will not be disturbed unless the record discloses a clear abuse of discretion." *Villegas*, 711 S.W.2d at 626; *accord In re E.L.T.*, 93 S.W.3d at 374.

Further, Rule 251 directs that no "continuance [shall] be granted except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251; *see In re R.F. III*, 423 S.W.3d at 490; *In re E.L.T.*, 93 S.W.3d at 375.

### B. Discussion

The trial court appointed the Department as the children's temporary sole managing conservator on May 2, 2016. *See* TEX. FAM. CODE ANN. § 263.401 (one-year deadline). The case

was set for trial on April 11, 2017. The Department, the children's ad litem, and the attorney representing E.O.R.'s father all announced ready. Mom advised the court she had filed a written motion for continuance, and she announced not ready. The trial court granted Mom's motion, reset trial for May 3, 2017, and warned Mom: "We're going to go that day."

On May 3, 2017, only a few days before the one-year deadline, *see* TEX. FAM. CODE ANN. § 263.401; *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 642 (Tex. 2009), Mom filed another written motion for continuance. The Department, the children's ad litem, and one of the presumed fathers announced ready, but Mom announced not ready. Mom explained she needed more time for the Department to complete a home study for the grandmother as a possible placement and for Mom to complete more services. Mom suggested that mediation might help the parties reach an agreement to avoid a trial.

The Department and the children's ad litem advised the court they were doubtful that mediation would be fruitful, Mom delayed beginning her services, and she was inconsistent in performing services. They also emphasized the need for permanency for the children. The trial court denied Mom's second motion for continuance.

Mom complains that the trial court abused its discretion in denying her motion, but the record shows there was no agreement to continue, and Mom does not argue the continuance was required "by operation of law." *See* TEX. R. CIV. P. 251; *In re R.F. III*, 423 S.W.3d at 490; *In re E.L.T.*, 93 S.W.3d at 375.

The trial court heard from Mom and the other parties, and the trial court exercised its discretion to deny Mom's motion. Mom has failed to show how the trial court's decision was "arbitrary or unreasonable" or "without reference to any guiding rules and principles." *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *In re E.L.T.*, 93 S.W.3d at 375. We overrule Mom's first issue.

**LEGAL, FACTUAL SUFFICIENCY CHALLENGES**

**A.      Parties' Arguments**

For her second issue, Mom contends the evidence was neither legally nor factually sufficient for the trial court to have found by clear and convincing evidence that Mom violated the statutory grounds or that terminating her parental rights was in the best interests of her children. Mom argues that she was no longer living with Dad, so the risk of domestic violence was greatly reduced. She noted E.O.R. is living safely with his father; A.A.A.G. was only recently placed with foster parents and he has not formed bonds with them, and her mother could care for A.A.A.G; and she could visit her children at their respective homes.

The Department responds that the evidence overwhelmingly supports termination of Mom's parental rights.

**B.      Evidence Required, Standards of Review**

For a suit to terminate a parent's rights to a child, the evidentiary standards[1] the Department must meet, the statutory grounds[2] the trial court must find, and the Family Code[3] and *Holley*[4] factors to determine the best interest of a child are well known; the legal[5] and factual[6] sufficiency standards of review are also well established. We apply them here.

**C.      Evidence of Statutory Grounds, Best Interests of the Children**

At the bench trial, the court heard testimony from several witnesses including two Department workers, E.O.R.'s stepmother, Mom's adoptive father, Mom's adoptive mother, Mom's biological sister, and Mom. The court also received recommendations from the children's attorney ad litem and the court-appointed special advocate (CASA) volunteer.

The trial court was the "sole judge[] of the credibility of the witnesses and the weight to give their testimony." *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The trial court found by clear and convincing evidence that (1)

Mom's conduct met the grounds stated in paragraphs (D), (E), (O), and (P), *see* TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2017), and (2) terminating Mom's parental rights was in the best interests of the children, *see id.* § 161.001(b)(2).

We recite some of the relevant evidence—which is probative for the statutory grounds and the best interests of the children. *See In re C.H.*, 89 S.W.3d at 28; *In re D.M.*, 452 S.W.3d at 471; *see also* TEX. FAM. CODE ANN. § 161.001(b).

### 1. Domestic Violence in the Home

One reason for the children's removal was household domestic violence. In multiple incidents, Dad struck Mom on her head, back, and legs; he was later arrested for felony assault for choking and strangling Mom. In one incident, while Mom was present, Dad tried to smother E.O.R.'s face with a bean bag chair. In another incident, after the car ran out of gas, Mom, Dad, and E.O.R. began walking. Dad was enraged; he repeatedly struck E.O.R. on the back of the neck, and Dad threatened to kill E.O.R., Mom, and himself if the police got involved.

Mom acknowledged the violent incidents but minimized their importance and any effect it had on the children. Although she completed a domestic violence class, at trial she testified that "if [Dad]'s not violent, then I'm going to be nice to him and take him to see my child."

The Department workers testified Dad was a threat to the children, they did not believe Mom would protect the children from Dad, and they recommended termination. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (4), (7) (West Supp. 2017); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (factors (C), (D), (H)).

### 2. Mom's Plan Services

Mom acknowledged that she was late starting her services and she did not complete all her ordered services. She was scheduled for twenty-four random drug tests, but she only attended four: three samples tested positive for marijuana and one tested negative. Mom was scheduled for

eighteen hours of substance abuse counseling, but despite multiple phone calls from the counselor, Mom did not call to set an appointment. Eventually, Mom came in, but she became confrontational in the interview, and she did not return for any counseling sessions. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (10), (11); *Holley*, 544 S.W.2d at 371–72 (factors (C), (D), (H)).

### 3. Children's Home Placements

E.O.R. is living with his father and stepmother. He is bonded to his father, and his father has demonstrated he is able to meet all of E.O.R.'s needs. A.A.A.G. is about one year old; he is living with foster parents. The foster parents are meeting all of A.A.A.G.'s needs and they want to adopt him. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (8); *Holley*, 544 S.W.2d at 371–72 (factors (D), (F), (G)).

### 4. Ad Litem's Recommendation

The children's attorney ad litem concurred with the Department's recommendation that Mom's parental rights be terminated. The ad litem noted the evidence regarding Mom's willingness to put the children at risk by continuing to turn back to her relationship with Dad, Mom's ongoing drug abuse, the children's need for permanency, and how well the children are doing in their home placements. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (11), (12); *Holley*, 544 S.W.2d at 371–72 (factors (B), (C), (D), (F), (H)).

Considering all the evidence in the appropriate light for each standard of review, we conclude that the trial court could have formed a firm belief or conviction that Mom's acts or omissions violated statutory grounds (D), (E), (O), and (P), and terminating Mom's parental rights to E.O.R. and A.A.A.G. was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). We overrule Mom's second issue.

**CONSERVATORSHIP CHALLENGE**

In her third issue, Mom argues that even if terminating her parental rights was proper, the trial court erred by leaving A.A.A.G. with his foster family rather than placing him with her mother and A.A.A.G.'s siblings.

We have already determined that the trial court did not abuse its discretion by denying Mom's motion for continuance and did not err in terminating Mom's parental rights to A.A.A.G. Thus, when the district court affirmed the associate judge's order, Mom became a former parent of A.A.A.G.; she no longer has any legal rights with respect to him. *See* TEX. FAM. CODE ANN. § 161.206(b) (West Supp. 2017); *In re H.M.M.*, 230 S.W.3d 204, 204 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see also In re L.T.P.*, No. 04-17-00094-CV, 2017 WL 3430894, at *6 (Tex. App.—San Antonio Aug. 9, 2017, pet. denied) (mem. op.). She cannot challenge the portion of the termination order that relates to the appointment of a conservator for him. *See* TEX. FAM. CODE ANN. § 102.006 (West 2014) ("[A]n original suit may not be filed by . . . a former parent whose parent-child relationship with the child has been terminated by court order . . . ."); *In re L.T.P.*, 2017 WL 3430894, at *6; *In re H.M.M.*, 230 S.W.3d at 204.

Assuming Mom could challenge the trial court's conservatorship decisions, her challenge would nevertheless fail. When the trial court terminated Mom's and Dad's rights to A.A.A.G., it was required to "appoint a suitable, competent adult, the [Department], or a licensed child-placing agency as managing conservator of the child." *See* TEX. FAM. CODE ANN. § 161.207 (West Supp. 2017); *In re L.T.P.*, 2017 WL 3430894, at *6.

We review a conservatorship decision for an abuse of discretion. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) ("Conservatorship determinations, in contrast [to termination decisions], are subject to review only for abuse of discretion, and may be reversed only if the decision is arbitrary and unreasonable."); *In re L.T.P.*, 2017 WL 3430894, at *6.

The trial court heard evidence that A.A.A.G.'s foster family—with whom he had lived for virtually his entire life—was bonded with him, fully provided for all his needs, and wants to adopt him. The trial court also heard the Department's recommendation that A.A.A.G. remain with the foster family. The evidence that A.A.A.G. has been living most of his life with a foster family that wants to adopt him is substantive and probative evidence to support the trial court's decision. *See In re H.N.T.*, 367 S.W.3d 901, 903 (Tex. App.—Dallas 2012, no pet.) ("As long as some evidence of a substantive and probative character exists to support the trial court's judgment, we will not substitute our judgment for that of the trial court."); *In re W.M.*, 172 S.W.3d 718, 725 (Tex. App.—Fort Worth 2005, no pet.) ("An abuse of discretion does not occur as to factual matters as long as some evidence of a substantive and probative character exists to support the trial court's decision."). The trial court did not abuse its discretion.

## CONCLUSION

Having overruled each of Mom's issues, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[1] <u>Clear and Convincing Evidence</u>. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that (1) the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code, and (2) terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *D.M.*, 452 S.W.3d at 472.

[2] <u>Statutory Grounds for Termination</u>. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b)(1). Here, the trial court found Mom's conduct met the following criteria or grounds:

   (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
   (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
   . . . .

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; [and]

(P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:
    (i) failed to complete a court-ordered substance abuse treatment program; or
    (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance.

*Id.* § 161.001(b)(1).

[3] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:
    (1) the child's age and physical and mental vulnerabilities;
    (2) the frequency and nature of out-of-home placements;
    (3) the magnitude, frequency, and circumstances of the harm to the child;
    (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;
    (5) whether the child is fearful of living in or returning to the child's home;
    (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
    (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;
    (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;
    (9) whether the perpetrator of the harm to the child is identified;
    (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;
    (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;
    (12) whether the child's family demonstrates adequate parenting skills; . . . and
    (13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re S.J.R.-Z.*, 537 S.W.3d 677, 692 (Tex. App.—San Antonio 2017, pet. denied).

[4] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:
    (A) the desires of the child;
    (B) the emotional and physical needs of the child now and in the future;
    (C) the emotional and physical danger to the child now and in the future;
    (D) the parental abilities of the individuals seeking custody;
    (E) the programs available to assist these individuals to promote the best interest of the child;
    (F) the plans for the child by these individuals or by the agency seeking custody;
    (G) the stability of the home or proposed placement;
    (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
    (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).

[5] Legal Sufficiency. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

---

[6] <u>Factual Sufficiency</u>. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266; *accord H.R.M.*, 209 S.W.3d at 108.